```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
TOLEDO FUND, LLC,                   :
                                    :
                      Plaintiff,    :    11 Civ. 7686 (KBF)
                                    :
              -v-                   :    MEMORANDUM OPINION
                                    :         & ORDER
HSBC BANK USA, NATIONAL             :
ASSOCIATION,                        :
                                    :
                      Defendant.    :
                                    :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/3/12

KATHERINE B. FORREST, District Judge:

On September 30, 2011, plaintiff Toledo Fund, LLC ("Toledo") filed this action against HSBC Bank, USA, National Association ("HSBC") in New York state court. On October 28, 2011, defendant timely removed the action based on complete diversity between the parties. Defendant now moves to dismiss the action in its entirety.

For the reasons set forth below, defendant's motion is GRANTED in part and DENIED in part.

FACTUAL BACKGROUND

In 2004 the parties entered into a series of consecutive swap transactions that spanned a period of several years. (Compl. ¶ 12.) The transactions enabled Toledo to participate in returns generated by a basket of

assets without requiring Toledo to own those assets directly. (Compl. ¶ 2.) The basket of assets assembled by HSBC in which Toledo had indirect participation, was a group of hedge funds (referred to as the "Reference Basket"). (Id.)

According to Toledo, it entered into the initial transaction as well as subsequent transactions, in reliance on representations made by Mark Overley, Managing Director of HSBC's Structured Fund Product Marketing. (Id. ¶ 14.) Plaintiff alleges that Overley told its representative that HSBC would closely and continuously administer and monitor the Reference Basket and that a watchful eye would be kept on the eligibility of the funds maintained therein. (Id. ¶ 14.) This was touted as a benefit — "Toledo Fund would not be saddled with such burdens, which would be obligations of HSBC." (Id. ¶ 14.) Toledo was told that this careful administration would avoid "blow ups." (Id. ¶ 14.) One way that HSBC would avoid "blow ups" would be by affirmatively monitoring and, when necessary, removing, funds that did not meet the eligibility criteria from the Reference Basket. (Id. ¶ 14.)

Plaintiff states that it relied on these representations in 2004 and "HSBC repeatedly made the same representations to Toledo Fund about the importance that it

2

placed upon its monitoring, research and due diligence obligations, as well as its superior skills in such areas, to assure that the hedge funds included in the Reference Basket would remain eligible at all times. . . ." (Id. ¶ 15.) Such promises were alleged to have been repeated each year between 2005 and 2008. (Id. ¶ 15.)

The transactions between Toledo and HSBC were governed by two sets of contractual documents, an "International Swap Dealers Association" Master Agreement (the "ISDA Form"), executed in 2004, and individual "Confirmation" agreements that would govern a specific transaction. (See Compl. Ex. A at 1.)

On December 10, 2007, the parties executed the Confirmation at issue in this case. (Id. Ex. A at 1; see also id. ¶ 20.) Pursuant to this Confirmation, HSBC and Toledo agreed to a series of specific terms pursuant to which Toledo would have certain rights relating to shares of a particular Reference Basket. (Id. Ex. A.) The group of funds included in the Reference Basket was referred to as the "Eligible Reference Funds." (Id. ¶ 3.)

The ultimate question in this case is the extent to which Toledo had enforceable contractual obligations as against defendant HSBC to conduct ongoing due diligence,

3

monitor and apply eligibility criteria with respect to the funds in the Reference Basket.

Pursuant to the 2007 Confirmation, HSBC exercised sole discretion to choose in which hedge funds it would invest; from time to time, and pursuant to certain "eligibility criteria", HSBC had the right, in its sole discretion, to apply the eligibility criteria and to change, or not change, which funds were Eligible Reference Funds includable in the Reference Basket. (Compl. Ex. A at Annex I.)

Of course, the quality and value of the funds in the Reference Basket was the key to Toledo's risk and reward. The interest that Toledo would pay to HSBC was equal to "the amount of interest payments that [HSBC] would have earned if HSBC had loaned Toledo Fund the money to purchase the hedge funds"; whereas, "Toledo Fund would receive the market appreciation (or loss) of the applicable hedge funds in the Reference Basket in the same manner as if it had been the direct 'legal' owner of the hedge funds." (Compl. ¶ 13.) The Confirmation also provided that Toledo would have the ability to request that HSBC alter the composition of the Reference Funds. This was referred to as the "Buyer Adjustment." (Id. Ex. A at 3.) Under the terms of the Confirmation, HSBC was under no obligation to make any

4

requested changes — according to the plain terms of the Confirmation, it exercised sole discretion over the composition of the funds. (Id. Ex. A at 3.)

As time passed, and the market and stock market volatility took their toll on all and sundry, Toledo alleges that HSBC failed to live up to its end of the bargain. In sum, Toledo alleges that HSBC kept funds in the Reference Basket that should have come out, and did not disclose to Toledo true values of certain funds. Had HSBC done so, alleges Toledo, it would have exercised its Buyer Adjustment and requested a change in the composition of the Reference Basket. (See e.g., Compl. ¶ 25.)

The complaint references two funds in particular that Toledo asserts HSBC failed to remove from the basket or provide adequate information concerning. According to the complaint, "by no later than approximately March 2008, HSBC knew or should have known that Lancelot Investors Fund, L.P. and/or Lancelot Investors Fund II, L.P. (collectively, 'Lancelot') did not qualify as an Eligible Reference Fund and thus should have no value ascribed to it." (Id. ¶ 25.) Over time, this failure reduced the value of the Reference Basket by $45 million. Similarly, sometime prior to June 2008, Toledo alleges that HSBC knew or should have known that a hedge fund called Palm Beach Finance Partners II,

5

L.P. ("Palm Beach") did not qualify as an Eligible Reference Fund and thus should have been removed from the Reference Basket and valued at zero. Over time, this reduced the value of the Reference Basket by approximately $23 million. (Id. ¶ 26.)

The complaint alleges claims for Breach of Contract (First Cause of Action), Breach of the Implied Covenant of Good Faith and Fair Dealing (Second Cause of Action), Fraud (Third Cause of Action), Negligent Misrepresentation and Negligence (Fourth and Fifth Causes of Action), and Promissory Estoppel (Sixth Cause of Action). All of these causes of action seek the same damages of "at least $70 million." (Compl. at 21.)

LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314,

6

321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments, dismissal is appropriate. Starr, 592 F.3d at 321 (quoting Iqbal, 129 S.Ct. at 1950).

DISCUSSION

Breach of Contract

Plaintiff alleges that the December 2007 Confirmation constitutes a contract, that it performed its obligations thereunder, but that HSBC breached it. HSBC's breach allegedly arises from its failure to fulfill its obligations to monitor the Reference Basket and "conduct due diligence and other investigation sufficient to ensure only Eligible Reference Funds were included in the Reference Basket as reported to the Toledo Fund." (Compl. ¶

7

32.) In particular, plaintiff asserts that HSBC's actions and inactions with respect to the Lancelot and Palm Beach Funds breached its contractual obligations. (Id. ¶¶ 25-26.)

Plaintiff has alleged the basic elements for a breach of contract action under New York law. See Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011) ("Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."). Dismissal of this claim would therefore not be based on a failure to allege the basic requirements, but whether an examination of those allegations reveals that there could not be a breach of the sort asserted because the face of the contract contradicts that HSBC has the obligations claimed. Accordingly, despite using magic words of breach, no breach could lie.

Looking into the contract to examine the existence or non-existence of certain claims is normally not an inquiry that this Court would or could undertake on a motion to dismiss. Here, the contract is incorporated by reference into the complaint and is, indeed, attached as Exhibit A thereto. Thus, this Court can and should ask whether, as a matter of law, it is possible for defendant to have breached the contract in the manner alleged in the

8

complaint. See Frey v. Bekins Van Lines, Inc., 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) (granting a motion to dismiss on breach of contract claim because there could be no breach of the contract); United States v. Davis, 666 F. Supp. 641, 643 (S.D.N.Y. 1987) (denying a motion to dismiss after determining that the contract at issue could in fact be breached). If the answer is "yes", then the action is well pled and may proceed. If "no", then this count must be dismissed. The answer is "yes", with a significant caveat.

The face of the Confirmation could not be clearer: HSBC had the sole discretion to determine whether or not a fund met the eligibility criteria. (Compl. Ex. A at Annex I.) Defendant argues that this necessarily means that it could not engage in a breach for failing to remove any fund — because all decisions as to which funds were in and which were out were HSBC's alone. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl. at 7.) This Court agrees that plaintiff ceded a great deal of discretion to defendant. Indeed, all decision making authority over who was in or out.

But, under New York law, implicit in all contracts is a covenant of good faith and fair dealing. 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (N.Y. 2002). "This covenant embraces a pledge that neither

9

party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. Furthermore, "[w]hile the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Id. (internal quotation marks omitted; citations omitted).

Implicit in the bargain at issue here, was that decisions would in fact be made, that the eligibility criteria for funds that made up the Reference Basket were not simply window dressing and extra words on a page. Defendant HSBC had an obligation under the covenant of good faith and fair dealing — which is a contractual obligation — to undertake an eligibility analysis regarding the funds placed into and maintained within the Reference Basket. HSBC may have undertaken such analysis, or it may not have done so. If it did so, and in its sole discretion nevertheless decided to keep the Lancelot and Palm Beach Funds (and perhaps other funds) in, then it may transpire that plaintiff cannot succeed on the merits of its case. That is a determination for down the road, after discovery on this topic. But if, for instance, defendant failed to

undertake any analysis at all, if it failed to apply the eligibility criteria at all, or if funds failed the eligibility criteria but were nonetheless maintained in the Reference Basket (and HSBC therefore did not make a determination that they "passed" the criteria) — all of which Toledo may have reasonably expected under the Confirmation — then defendant may have failed to fulfill its duties of good faith and fair dealing to Toledo. This is also a determination for another day.

Accordingly, there is a plausible set of facts that could entitle plaintiff to relief on its breach of contract claim. See Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1949-50. The merits of that claim are left for another day.

Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff has asserted a separate claim for breach of the implied covenant of good faith and fair dealing. This claim is entirely redundant of the breach of contract claim. Under New York law, such duplicative claims should be dismissed. See e.g., Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is

11

merely a breach of the underlying contract."). If plaintiff is entitled to recovery of its contract claim, Count One provides a sufficient basis.

Accordingly, the Second Cause of Action (For Breach of the Implied Covenant of Good Faith and Fair Dealing) is dismissed as redundant of the First Cause of Action (For Breach of Contract).

Fraud

The fraud claim is similarly redundant of the breach of contract claim. However, there is an additional nuance. Plaintiff asserts that the Overley statements first made in 2004 and then repeated annually until 2008 constitute fraud in the inducement. (Compl. ¶ 14.) As a matter of law, however, this claim merges with the breach of contract claim. See Bridgeston/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19-20 (2d Cir. 1996) ("We may assume that the[] representations were intended to lull [plaintiff] into a false sense of security . . . . However, these facts amount to little more than intentionally-false statements [] indicating [an] intent to perform under the contract. That is not sufficient to support a claim of fraud under New York law."); McKernin v. Fanny Farmer Candy Shops, Inc., 176 A.D.2d 233, 234 (N.Y. App. Div. 1991) ("It

12

is well settled that where, as here, a claim to recover damages for fraud is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement a cause of action sounding in fraud does not lie.")

In addition, there is a specific contractual provision in the Confirmation which provides that the Confirmation, along with all other documents referring to the ISDA Form, represents the entire agreement between the parties. (Compl. Ex. A. at 1.) Thus, since plaintiffs are asserting the Overley made statements to induce it to enter into the contract at issue, such an action is not cognizable under New York law.

Accordingly the Third Cause of Action (Fraud) is dismissed.


Promissory Estoppel

Promissory estoppel also sounds in contract theory. Restatement (Second) of Contracts § 90 (1981). Thus, as with its breach of the implied covenant of good faith and fair dealing and fraud claims, plaintiff's promissory estoppel claim must be dismissed because it is redundant of the breach of contract claim. (Compare Pl.'s Mem. of Law in

13

Opp. to Defs.' Mot. to Dismiss the Compl. at 20 ("HSBC made specific promises that it would closely and continuously monitor the hedge funds included in the Reference Basket to ensure that they met the eligibility requirements for the Transactions . . . .") with Compl. ¶ 5 ("HSBC's obligations to Toledo fund -- as both a close monitor of the continuing eligibility of hedge funds included in the Reference Basket and as a communicator of accurate information concerning the various funds' respective status as an Eligible Reference Fund -- were material terms of the agreement between HSBC and Toledo Fund, intended for the benefit of Toledo Fund.")

The Sixth Cause of Action (Promissory Estoppel) is therefore dismissed.

Negligent Misrepresentations and Negligence

In order for plaintiff to maintain claims for negligent misrepresentation or negligence, it must allege that there was a special relationship of trust and confidence between the parties. See Sogeti USA LLC v. Whirlwind Bldg. Sys., Inc., 274 Fed. Appx. 105, 107 (2d Cir. 2008) (negligent misrepresentation); Syracuse v. Loomis Armored US, LLC, No. 5:11-cv-00744 (MAD/GHL), 2012 WL 88332, at *6 (N.D.N.Y. Jan. 11, 2012) ("Plaintiff ahs

14

failed to allege the existence of a 'special relationship' or legal duty independent of its contractual relationship with Defendant; and, therefore, the Court grants Defendant's motion to dismiss Plaintiff's negligence causes of action."). This relationship must be different from the arms-length, business relationship the parties had. See Busino v. Meachem, 270 A.D.2d 606, 608-609 (N.Y. App. Div. 2000) ("A 'special relationship' requires a closer degree of trust than an ordinary business relationship."). Here, no allegations support such an assertion.

There are no plausible facts asserted in the complaint that suggest that there was any type of special relationship between the parties. The use of the merely conclusory allegation that such a relationship existed is insufficient as a matter of law. See Syracuse v. Loomis Armored US, 2012 WL 88332, at *6; Citibank, N.A. v. Silverman, 85 A.D.3d 463, 445 (N.Y. App. Div. 2011).

Accordingly, the Fourth Cause of Action (Negligent Misrepresentation) and the Fifth Cause of Action (Negligence) are dismissed.

CONCLUSION

For the reasons set forth above, Causes of Action Two through Six are dismissed with prejudice.

SO ORDERED.

Dated:   New York, New York
         February 3, 2012

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　KATHERINE B. FORREST
　　　　　　　　　　　　　　　　United States District Judge

16